WALLACE, JUDGE:
Claimants are the owners of real estate located on West Virginia Route 105, commonly known as Pennsylvania Avenue, in Weirton, West Virginia. Two buildings exist on the property. A commercial building and parking area front on West Virginia Route 105. At the rear of the property and to the left of the parking area and commercial *280 building is a dwelling house with a basement garage. An asphalt driveway is located adjacent to the parking area. This driveway extends from Route 105 to the garage door at the basement level of the dwelling house. Claimants normally rented the commercial building as a restaurant-bar and the basement of the building was rented separately for storage purposes. The dwelling house was rented as well.
During the months of May and June of 1980, there was a series of three storms during which flooding occurred on claimants’ property. As a result of the flooding, certain damage occurred: an asphalt driveway to the dwelling house was damaged; the concrete porch of the dwelling house was pushed off its foundation and into the basement of the house; the retaining wall adjacent to the parking area of the commercial building was damaged; water flooded the basements of the commercial building and the dwelling, damaging furnaces, water heaters, wiring and plumbing; and landscaping was eroded. Claimants also contend that the property suffered a diminution of value and a loss of business because the premises became difficult to rent.
Claimants allege that the flooding which occurred to the property was caused by failure of the respondent to properly maintain certain catch basins located on the north side of West Virginia Route 105. The basins filled with water and overflowed across the road onto the parking area of the commercial property and also down the driveway to the dwelling house.
Silvio Pinciaro, father-in-law of claimant Fredrick Staffilino, testified that he managed the property for the claimants. He had purchased the property in 1968 and sold it in 1972. In 1979, his daughter and son-in-law, claimants herein, purchased the property. During the time that Mr. Pinciaro owned the property in 1969, he had constructed the parking area adjacent to the commercial building. In so doing, he moved the driveway to the dwelling house and also constructed a catch basin and drainage system from Route 105 down the east side of the property where it crossed in front of the dwelling house through an open, concrete block drain into a steel pipe which connected to a 24-inch drain on the west side of the dwelling house. He testified that the property had not experienced any flooding problems during the years which he owned the property.
After the first flood in May 1980, Mr. Pinciaro explained that he examined the catch basins on the road where water was standing and determined that several were plugged up with dirt and debris. The water was flowing across the road and onto claimants’ property. He complained first to the City of Weirton which sent him to the respondent. He complained to the respondent but no action was taken. He *281 complained again after the second flood. The respondent attempted some remedial measures at that time which did not work. After the third flood, the respondent took actions to clean the catch basins and to open the clogged drain. Thereafter, the claimants experienced no further problems with flooding on the property.
Donnie L. Bensanhaver, an engineer and maintenance assistant in District 6 of the Department of Highways, testified for respondent. He explained the relevance of the elevations of the drains and points on claimants’ property. In general, the property is below the level of the surface of the road. The dwelling house on the property is located in a natural water channel. He theorized that the drainage system constructed by Mr. Pinciaro located in front of the house would overflow onto the property in a heavy rainstorm.
Thomas A. Bryant, II, a field operations engineer for respondent, testified that the respondent’s county maintenance personnel had the responsibility to inspect the ditches and pipes along West Virginia Route 105 on an annual basis to ascertain that the systems were open. He also explained that respondent constructed a curb in front of the driveway on claimants’ property to control the problem of water overflowing onto claimants’ property.
Elmer B. Shepherd, respondent’s maintenance supervisor for Hancock County, testified that the drainage ditches and pipes were cleaned on an annual basis. This process includes inspection of the drop inlets or catch basins on an annual basis to determine if debris has clogged them. He testified that the maintenance generally occurred in the fall and the summer.
After an examination of the evidence and testimony presented in this claim, the Court concludes that the flooding which occurred on claimants’ property resulted from the overflow of the catch basins located on West Virginia Route 105. The respondent had noticed from claimants after the first flood but failed to remedy the clogged basins, and the Court finds the respondent liable to the claimants for the damages which occurred to the property during the second and third floods.
Both claimants and respondent submitted depositions of real estate appraisers who testified as to the before and after market values of the property. Claimants’ appraiser determined the difference in market values to be $44,900 while respondent’s appraiser determined this difference in value to be $7,000.00. The Court has reviewed the basis for each appraisal and has determined that a difference in market value of $20,000.00 is fair and reasonable. The Court reduces this amount by 30 percent for damages attributable to the first flood and makes an *282 award to the claimants in the amount of $14,000.00 for damages which occurred during the second and third floods.
Award of $14,000.00.